Good morning, Your Honors. I'm Mike Adams, attorney for Appellant. And let me say at the outset I would like to reserve two minutes for rebuttal. All right. Please be aware that the time on the clock is your total time. I understand. Okay. And let me then ask the Court if the Court has any particular concerns it would like me to focus upon before I move into my prepared remarks. No, but we'll feel free to interject if we have some. Thank you. Okay. Thank you very much. As indicated in my briefing, we're pursuing two alternative theories to conclude that the trial court erred in granting the motion for summary judgment. The first being equitable estoppel, the second being equitable tolling, both supporting a conclusion that my client's FMLA rights were interfered with. Now, let me start with equitable estoppel. Granted, the Nathan case decided by the Ninth Circuit a good number of years ago is an obstacle that needs to be addressed, at least as it has been construed in subsequent cases to indicate that some sort of intent to deceive or a wrongful state of mind by the person whose actions are being relied upon is necessary. And as I've contended, there are two ways around that obstacle. The first, because we're not contending here that there was any intent to deceive on the part of the covenant personnel employees that were involved, we're granting that. However, the first way around the Nathan case is to say, subsequent to the decision of that case, the U.S. Supreme Court in Heckler enunciated a point of Federal common law by incorporating into the common law the restatement definition of equitable estoppel in which no requisite state of mind for the person whose actions or words are being relied upon is necessary. But that doesn't work very well, does it? I'm sorry? That doesn't work very well, though, does it? Because we seem to have gone on citing Nathan even after that. So as far as the panel is concerned, that doesn't help, does it? Well, we keep saying Nathan is the rule. I appreciate that. And maybe the Ninth Circuit's wrong, but we can't do anything about that today. How about number two? The second way around Nathan is to interpret it in the literal words of its own holding. While some courts or some decisions, even by the Ninth Circuit, have construed it quite narrowly to require, you know, an actual intent to deceive, if you look closely at the language of Nathan, it uses the word or the phrase constructive knowledge. And as I've argued in the brief, in other words, that the person whose actions are being relied upon, it's sufficient if that person constructively knew that they were going to be deceived. But it requires a showing of improper purpose, right? Well, constructive knowledge, I submit, does not require improper purpose in terms of intentional misleading, but rather it's more like a negligence standard. In other words, if the person who's being relied upon should have known, that's constructive knowledge, that they were going to be their conduct was going to mislead the relying party, then that under Nathan is sufficient. And we have that in the facts here. Because, and I'm focusing on the three different occasions that persons in the personnel office of Covenant looked at forms that laid out the three-month time period that my client mistakenly thought she was entitled to and was seeking, July 1 to October 1. The first occasion was when Cindy Johnson saw the initial application for an interview to discuss the FMLA application and had my client's application form right there, giving those dates in handwriting, large. The second occasion was when my client brought back the medical certification from her mother's doctor, where the mother's doctor had dutifully followed my client's indication of the dates she wanted and hand wrote right in the middle of the form, in not tiny print, July 1 to October 1. Cindy Johnson, the person who initially had interviewed my client, saw that, saw the form, it's a single-page form, and sent it back because of the doctor having incorrectly checked off no at the bottom in terms of whether mom really needed help. But was this, are those definite misrepresentations? I mean, these circumstances. Well, they're not intentional misrepresentations. Are they misrepresentations at all? Well, it's misleading conduct. It's not an affirmative representation, granted that. But we have cases that I've cited where silence by an employer can be misleading and that that suffices. That's what we have here, silence in the face of three occasions when those dates are put right squarely before the eyes of people in the personnel office. But that was still in the process before approval. I think you would have a different case if there had been a signature or an okay from someone with those dates there. Well, granted, we don't have unconditional approval. But we do have conditional approval twice. Cindy Johnson, when she gives my client the medical certification form saying, go have your doctor fill this out, she tells my client that once the doctor correctly fills out this form, you've got your leave. No ifs, ands, or buts. Single qualification. In a way, it's a little bit like the last case where there was a clear exception with the attorney's fees. Here, there was a clear qualification, clearly delineated about what next had to be done in order to have her leave. Your client, speaking of what people should know, your client knew, I think, or should have known, there's going to be a letter coming regarding her leave. And as far as I can tell, she didn't do a single thing to see to it that she got the letter. The letter, for all we know, could have said, your leave is denied. I don't know what it was going to say. And she couldn't possibly know what it was going to say. And she goes off for four months, makes herself unavailable. Somebody's even at home receiving her mail during part of that time. Nobody bothers. She doesn't care. Nobody cares. She doesn't make any effort to find out. Why is that reasonable reliance? How does she get reasonable reliance out of that? She was reasonable in believing the letter would be a routine grant of the leave. Never by routine. She's supposed to be getting a letter. And it's even sent certified, I think. I mean, the company has made it quite clear, your leave is what comes when you get the letter. Then we tell you exactly what the deal is. And she's gone through the process before, if I recall correctly. She's taken leave before and gotten the letter. And this time, she just doesn't even bother. And they told her to expect it. Yeah. Yes. And she told her to expect the letter. And she just wandered off. She doesn't even care. So many hills. How can that be reasonable reliance? Well, when she's told by two different persons in the personnel office that clearing up the medical certification is all you need to have your leave, the question is whether is she reasonable in taking those words spoken to her face-by-face, twice, as sufficient to go on her trip without checking what essentially would be a form letter. But that wasn't a representation regarding how much leave would be awarded. Well, we have sets of eyes by the personnel office being placed on forms filled up on my client and by her doctor, the medical certification, saying three months. And when they say, your leave is going to be granted, just have the doctor check the right box,  And the reason I think that's reasonable is because there's a reason for the three months. Implicit in that, and I submit reasonably implicit in that, is that there was a tacit approval of the three months. I may reserve what little time I have left. Thank you. Good morning, Your Honors. This is Joe. My name is Joe Schwachter. I'm appearing on behalf of the defendant in Appellee Covenant Aviation. Following the lead of other counsel, if the Court has any questions you're looking to focus on, otherwise I'll present my argument. The Court is correct that this case is controlled by nature. And it's progeny. Natan has been applied by the circuit in a number of employment cases. The Ninth Circuit has actually never applied equitable estoppel at all in FMLA, family medical leave cases. Not to say that it cannot, but it has not. In Natan v. Bank of California, as the Court is aware, the requirement is that not only does the plaintiff have to show actual and reasonable reliance, but also, as the Court said, important is evidence of an improper purpose or a deceptive nature. And the lower court found that there was no evidence at all of any deceptive nature. And plaintiff's counsel reiterated this morning that they do not even contend that there is evidence of a deceptive nature. Let me ask you something about Natan. Natan dealt with statements made that the person relied upon, let's say, in not filing a claim within the statute of limitations, right? That's right. A procedural issue. That's what Natan was about. Yes. This case doesn't have to do with filing a claim within the statute of limitations. It has to do with, let's say, hypothetically, being told you have, let me pick a different example. You have six months being on a leave, and the person comes back after six months, and they say, oops, you didn't have six months because you're not entitled to it and you're fired. Okay? Is there any anomaly or disconnect in plain Natan to this set of facts? No. First of all, Your Honor, in this case, there is no representation. Like you suggest, Ms. Chabon conceded during her deposition, which I took, that in neither meeting with HR did HR ever even talk about the dates of her leave. You're not talking to me about Natan now. You're talking to me about something else. You're talking about misrepresentations or reliance. I'm talking about Natan only. Is there an anomaly implying Natan to a situation where, stipulate for the moment, horror of horrors. Okay. Let's say we decided, you know what, there was a representation. Now, it doesn't matter how you put it. Is there a problem implying Natan if there were a representation? I don't think so, Your Honor, because in not only in Natan, but in every case since Natan, in a variety of circumstances, be it immigration law or the age discrimination, in all those cases. That's the government. Right. The government, of course, we all know is unique. In fact, Heckler basically said. That's what Heckler thought. Heckler kind of talked about the restatement rule, but by way of saying, well, you've got to at least have that. But anyway, with the government, they've got to be especially bad. So government cases don't sort of count within alchemy, do they? I agree. I agree. So. Back to Natan. I'm sorry? Back to Natan. Back to Natan. I don't see that there was any representation that was made. So you don't even have the basic elements of equitable estoppel to apply the doctrine. Even if you took away Natan. You mean in this case? Yes. Okay. Come into my cosmos for a moment, okay? Come out of the real world and into mine. Okay. And in my world, there was a representation. Let's just say. Okay. This is hypothetical. Absolutely. So let's say there was a representation. Okay. Okay? Now, let's talk about Natan. How does the statute of limitations argument come over to the misrepresentation argument? Are you with me? I'm sorry? Are you with me? Yes. Yes. So. Well, I think they're different situations. And depending on what there's a statute of limitations, and you're not familiar with what the statute is, or you act on reliance on what you believe it is, as opposed to in this case where there, I understand your analogy, but there is no basis on any, there's no basis for applying equitable estoppel even without Natan. So I understand you're saying there's a difference between a procedural issue in terms of Natan and a substantive issue as we're talking here, but I don't see the difference in particularly given that this Court has applied that test in a variety of situations, not just on statute of limitations purposes. So are you saying we should apply Natan to the analysis of this case? Absolutely. Absolutely. So what about opposing counsel's reliance on Heckler to limit Natan? Well, first of all, as Justice Fernandez pointed out. You know we're not justices. They say there is no justice in the Ninth Circuit. I'm sorry, Your Honor. As Judge Fernandez pointed out, the Supreme Court actually did use those words, that you must at least prove actual and reasonable reliance as a minimum. The Ninth Circuit rule is not in conflict with that. In fact, the Ninth Circuit rule is not, the Ninth Circuit is not singular in using the Natan test. We pointed out in our brief the Fourth Circuit uses it as does the First Circuit and the Seventh Circuit. There are a number of circuits that use that test. The court correctly applied Natan, and there is actually the alternative argument about that the defendant knew the deceptive nature of his conduct. There is no deceptive nature. Even taking what plaintiff's counsel said to you this morning, talks about two meetings or three meetings, two with Ms. Johnson at the beginning, she made were negated by the fact that she sent out a letter specifically telling Ms. Chabon that her leave was denied. Well, what about the fact that the application went through several submissions where the dates were clearly listed? Is there any kind of significance to that fact? No. First of all, when you, when any HR department looks at a leave form, the first thing that you're going to look at is whether or not the person is eligible for the leave. And then secondly, you'll see what the dates that they want to take. When all of these meetings concerned was whether she, was she eligible for the leave. And even in the second meeting, or the meeting with Ms. Harris and Ms. Singh, after the letter from Ms. Johnson was sent out denying the leave, they explained to her that yes, the leave was denied because your doctor checked the box and said your care wasn't needed. And if you want, you could go back and get the form corrected, but you need the doctor to explain the reasons for the switch. And Ms. Chabon conceded that in her declaration opposing summary judgment. Well, in one of my former lives, I was an HR person. And when you get a form, you look at every part of it. You don't just isolate on one part of the form. You check it because you don't want to go back and say this is right, this is right, this is wrong. You don't want to do that seriatim. You want to look at the entire form and give the person one response as to what the person needs to do. So I find it a little hard to believe that nobody looked at the date. Well, in assessing FMLA, family and medical leave, the first thing, there are a number of factors that make an employee eligible or ineligible for leave. So that's the first thing. And one of those is how much time are you eligible for? Because not everyone is necessarily eligible for the entire period of time. So that's one of the important things. That's right. And, you know, to that point, Judge Breyer made a comment during oral argument. He said that if Ms. Schabone had not put any end date on her application, if she had just put July 1st and not put an end date, would that entitle Ms. Schabone to indefinite leave forever? That doesn't make sense. But that's different than when you actually have a finite date listed. And quite frankly, when you first look at July 1st to October 1st, unless you look at a calendar, it looks okay. So that's why you have specialists who are supposed to make sure that it's in compliance with the law. And it was redone. And when it was redone, wasn't it redone by the personnel? It was actually redone by the HR department because Ms. Schabone left without having her doctor explain the reason why one day she said yes and another day she said no. So the HR department went out on their own after calling Ms. Schabone on her cell phone and her home phone and not being able to reach her and took it upon themselves to make certain that she got to leave. So in the erroneous days. Absolutely. And then as soon as they saw that she was eligible because of their own work, they immediately notified her. They called her. They did everything they could to notify her. They do not use e-mail for health information. But they – and her husband was home. And they not only sent these letters certified, but they also sent them regular mail. While the certified were returned, the regular were not. All right. Thank you, counsel. Thank you, Your Honor. Rebuttal. Rebuttal. Yes, just a couple of further points. As to equitable estoppel, you were asking me about my client perhaps seeming to be cavalier and just traipsing off to Egypt for several months. But I think the proper perspective to look at this through is the knowledge that was contained in that personnel office. She told the first two people that she met with, Nina Cox and then Cindy Johnson, Nina Cox for the vacation and Cindy Johnson for the start of the FMLA application, that she was going to be going to Egypt to accompany her mother. And she told Nina Cox when she was getting the first piece into place, the vacation that was going to be in front of the FMLA time period, of her personal e-mail address. And Nina Cox used that to approve that first piece of the entire period of time. These are all people in the same personnel office suite. You know, there's a principle that whatever the agent knows, the principle knows. I mean, this knowledge was contained within a small sector of Covenant. And in any event, they were all agents of Covenant acting within their duties. Covenant knew that she was in Egypt. Covenant knew that she had a personal e-mail address. And it's reasonable to say that that personal e-mail address was a promising, a plausible way to reach her once the certified letters were coming back. But consistent with health care information, that information is not usually transmitted by e-mail because of the inability to guarantee that it's confidential. So I'm not sure that that's a good argument. Well, it was in fact used to transmit information that her vacation period was approved up until the time of the letter.  And I'm not sure that the letter was approved until then.   Vacation is different than FMLA. It would be something she would read. I'm sorry. It would be her approval, right? She was told to get written notification of her leave of work. Or a routine confirmation of the approval that she received verbally twice talking to them. All right, counsel. We understand your argument. You can cede your time. All right. We understand your argument. Five seconds. I just want to point out. Five seconds. Equitable tolling is my second argument. I believe that her conduct looked at through the prism of equitable tolling, which is from All right. Thank you, counsel. We understand your argument. Okay. Thank you. Thank you to both counsel. The case is submitted for decision by the Court.
judges: Wells, Fernandez, Rawlinson